UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Vision Service Plan,<br><br>    Plaintiff,<br><br>    v.<br><br>Illinois Union Insurance Company, et al.,<br><br>    Defendants. | No. 2:22-cv-00743-KJM-DB<br><br>ORDER |

      The plaintiff in this insurance coverage dispute (Vision Service Plan or "VSP") alleges its insurer (Illinois Union Insurance Company) wrongly denied coverage for losses arising out of the COVID-19 pandemic. VSP argues the virus created an insured "pollution condition." Illinois Union disagrees, and moves to dismiss for failure to state a claim. VSP has not shown that its claim fell within the basic scope of coverage. Its complaint is **dismissed without leave to amend**.

I.    **ALLEGATIONS**

      VSP is the parent of several companies harmed by the coronavirus pandemic. Compl. ¶¶ 25–43, ECF No. 1-1. It alleges the pandemic and related public health orders interrupted its business and increased its cleaning and sanitation costs. *See, e.g., id.* ¶¶ 18, 24, 36–39, 71–72. VSP has an insurance policy with Illinois Union and submitted a claim. *See generally* Policy, *id.* Ex. A, ECF No. 1-1; Compl. ¶ 65. Under that policy, Illinois Union agreed to pay for loss

1

resulting from claims and first-party claims "arising out of . . . a 'pollution condition' on, at, under or migrating from a 'covered location' . . . ." Policy at 1. The policy defines "pollution condition" at length:

> The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

*Id.* at 9–10. Illinois Union denied the claim because it determined a viral pandemic was not a "pollution condition." Compl. ¶ 66.

After Illinois Union denied the claim, VSP filed this action in California state court. *See generally id.* VSP claims Illinois Union breached its obligations under the policy, *id.* ¶¶ 74–85, and denied coverage in bad faith, *id.* ¶¶ 86–99. VSP also seeks declaratory relief and specific performance. *Id.* ¶¶ 100–17. Illinois Union removed the case to this court, relying on this court's diversity jurisdiction. *See* Not. Removal, ECF No. 1. Illinois Union now moves to dismiss for failure to state a claim under Rule 12(b)(6). *See generally* Mot., ECF No. 10; Mem., ECF No. 10-1. VSP opposes, ECF No. 12, and the court submitted the matter after full briefing and oral argument. *See* Reply, ECF No. 13; Mins. (July 8, 2022), ECF No. 15. Cecilia Miller appeared at argument for VSP, and Susan Sullivan appeared for Illinois Union.

After the motion was submitted, Illinois Union filed a notice of supplemental authority, citing a brief decision by a New York State trial court about a similar claim and a similar Illinois Union policy. ECF No. 16. VSP requested leave to file a response to that notice. ECF No. 17. Illinois Union objects to that request. ECF No. 18. VSP's request for leave to respond is **granted**. The court has considered the supplemental filing. *See* ECF No. 17-1.

**II.   RULE 12**

A motion to dismiss under Rule 12(b)(6) may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

1    *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v.*
2    *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual
3    allegations are true and construes "them in the light most favorable to the nonmoving party."
4    *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch.*
5    *of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do
6    not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*,
7    556 U.S. 662, 679 (2009).

8        The court begins with the contract claim, which is governed by California law.  *See* Mem.
9    at 12 n.4; *see also Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir.
10   1990).  Under California law, the party asserting coverage bears the burden to establish a claim
11   "is within the basic scope of coverage."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648
12   (2003).  In this case, coverage is a straightforward question of contract interpretation: did the
13   claimed losses arise out of a "pollution condition" as defined?

14       "Interpretation of an insurance policy is a question of law and follows the general rules of
15   contract interpretation."  *Id.* at 647.  Contract interpretation seeks out the parties' "mutual
16   intention" at the time the contract was formed.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18
17   (1995) (citing Cal. Civ. Code § 1636).  If possible, the parties' intent is inferred solely from the
18   policy's written terms as a whole.  *Id.* (citing Cal. Civ. Code § 1639).  The policy's words are
19   therefore the place to start.  *Id.*  Unless the parties intended to use words in a technical or special
20   sense, a court reads a policy's language to understand its plain meaning as a layperson ordinarily
21   would.  *Id.* (citing Cal. Civ. Code §§ 1638, 1644).

22       Perhaps if read in isolation, with a forgiving eye, the policy's definition of "pollution
23   condition" might encompass the coronavirus pandemic or its effects.  The definition describes,
24   among many other types of pollution conditions, the "release" of "any" "contaminant" or
25   "irritant" into "structures," and it offers "infectious or pathological wastes" as examples.  Policy
26   at 9–10.  As VSP alleges, the virus that causes COVID-19 is transmitted when saliva and
27   respiratory secretions are expelled into the air and onto surfaces by coughs, sneezes, and speech.
28   Compl. ¶ 13.  These droplets might count as "infectious waste" under the policy, and when they

are expelled from the lungs of a coughing visitor and "contaminate" a "structure," perhaps they could become a "pollution condition" under the policy's expansive terms. Policy at 9–10.

But California courts do not interpret disputed contract terms in isolation. Language "must be interpreted as a whole." *Waller*, 11 Cal. 4th at 18. Here, the policy covers more than just pollution conditions. It also covers losses arisings from an "indoor environmental condition." *Id.* at 1. An "indoor environmental condition" is defined as:

> 1. The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or
>
> 2. The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure, provided that such "fungi" or *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

*Id.* at 7 (emphasis omitted). The policy defines "fungi," in turn, as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by 'fungi'." *Id.* *Legionella pneumophila* is a species of bacteria that causes Legionnaire's disease. *See* 6 Attorneys Medical Advisor § 54:13 (2022). It can be found in plumbing, air conditioning systems, and similar places. *Id.*

The meaning of "pollution condition" comes into clearer focus with the benefit of the broader context provided by these other policy provisions. If the definition of "pollution condition" included viruses as "contaminants" or "irritants," it would also include bacteria, fungi, and other microorganisms that might contaminate the air and water in a building. The pollution condition coverage would then eclipse the policy's narrower coverage for indoor environmental conditions. It is more appropriate to read these provisions separately, however. A contract should be interpreted as a whole "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. "[A]n interpretation that gives effect to every clause is preferred over one that would render other policy terms meaningless." *Union Oil Co. v. Int'l Ins. Co.*, 37 Cal. App. 4th 930, 935 (1995). The policy offers coverage for contamination by infectious diseases, to the extent it offers that coverage at all, in the provisions

4

related to "indoor environmental conditions." Otherwise those provisions would serve no purpose.

A federal district court in Minnesota recently interpreted similar policy provisions the same way. *See Essentia Health v. ACE Am. Ins. Co.*, 541 F. Supp. 3d 943, 949–50 (D. Minn. 2021). In Minnesota, as in California, "a court must interpret a policy to give effect to all of its provisions." *Id.* at 951 (citing *King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 316 (Minn. 2021)). Although the Minnesota district court acknowledged the novel coronavirus might create a "pollution condition" because it is a "'solid, liquid, gaseous or thermal thing that 'produces irritation,'" the policy in that case also included "indoor environmental condition" coverage for viruses and bacteria. *Id.* at 949–51. If the policy's "pollution condition" coverage covered viruses, then "there would be no need for the narrower form of coverage" in the "indoor environmental conditions" portion of the policy. *Id.* at 951.

The court reached the same conclusion in another recent case against Illinois Union in a Virginia federal district court. *See generally Central Laundry, LLC v. Ill. Union Ins. Co.*, 578 F. Supp. 3d 781 (E.D. Va. 2022), *appeal filed*, No. 22-1075 (4th Cir. Jan. 21, 2022). Again applying the rule that contracts are interpreted as a whole and "the various provisions harmonized," *id.* at 790 (quoting *Schuiling v. Harris*, 286 Va. 187, 193 (2013)), that court found it "telling" that the policy "creates a separate category for 'indoor environmental conditions,'" *id.* at 791. The decision to separate "indoor environmental conditions" from "pollution conditions" showed that "pollution conditions" "was not to be read liberally." *Id.* at 793 (citing *Essentia Health*, 541 F. Supp. 3d at 948–53 and collecting other similar authority); *see also Northwell Health, Inc. v. Illinois Union Ins. Co.*, No. 20-6893, 2022 WL 912929, at *5 (S.D.N.Y. Mar. 29, 2022) (following *Essentia Health* and *Central Laundry*); *cf. Crescent Land Dev. Ass'n LLC v. Illinois Union Ins. Co.*, No. 657152/2021 (N.Y. Sup. Ct. N.Y Cty. Sept. 7, 2022) (dismissing similar claims based on similar interpretation of same policy definition).

Although California courts appear not to have confronted the definition in dispute in this case, they have directly and thoroughly interpreted the word "pollutants" when it has been used in an exclusion. *See Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146,

1152 (N.D. Cal. 2018) (citing *MacKinnon*, 31 Cal. 4th 635). Unlike coverage provisions, which are "interpreted broadly . . . , exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 648 (quoting *White v. W. Title Ins. Co.*, 40 Cal.3d 870, 881 (1985)). Despite that crucial difference, the California Supreme Court's reasoning in *MacKinnon* applies just as well to this case, as the district court persuasively explained in *Essex Walnut*.

Indeed, "absurd results" are inevitable when "pollution" and "pollutant" are interpreted as broadly as VSP proposes. *See* 335 F. Supp. 3d at 1152 (quoting *MacKinnon*, 31 Cal. 4th at 652). Almost anything can irritate in the wrong circumstances. *See id.* (citing *MacKinnon*, 31 Cal. 4th at 650). So in the case of a pollution exclusion, nothing would be covered if "pollutant" is interpreted too broadly; by the same token, a broad coverage provision would reach "just about everything." *Id.* In this case, for example, if "pollution condition" is interpreted broadly, a sick person's cough would create a "pollution condition" in any business or home, and the pandemic may very well have "polluted" most public places.

The more natural way to read both the coverage provision and the exclusion is using the everyday meaning of "pollution" as "environmental pollution." *Id.* The policy's language weighs in favor of this conclusion as well. It refers to "seepage" and "migration" of "acids," "chemicals," "hazardous substances," "hazardous materials" and "wastes" into "the atmosphere, surface water, or groundwater." Policy at 9–10; *see also London Bridge Resort LLC v. Illinois Union Ins. Co. Inc.*, 505 F. Supp. 3d 956, 958–59 (D. Ariz. 2020) (reasoning similarly in case addressing same policy language).

To defend its broader interpretation of "pollution condition," VSP points out the policy makes no exclusions for viruses and pandemics. *See* Opp'n at 21–22. But, as in another recent state court case, "[t]his contention is flawed because it improperly attempts to rely on the absence of an exclusion to create an ambiguity in an otherwise unambiguous insuring clause." *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 709 (2021), *review denied* (Mar. 9, 2022). "There is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement." *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996) (applying California law).

VSP cannot show its claims fall within the basic scope of coverage, so it cannot state a claim for breach of contract. Nor can it prevail in its claim that Illinois Union denied coverage in bad faith. "[A] bad faith claim cannot be maintained unless policy benefits are due . . . ." *Waller*, 11 Cal. 4th at 36 (citation and quotation marks omitted)). The declaratory judgment claim is also duplicative of the contract claim. *See United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015). The same is true of VSP's derivative request for specific performance. *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1055 (C.D. Cal. 2015). These claims are dismissed as well.

## III.   DISCOVERY AND AMENDMENT

What remains, then, are VSP's requests for discovery and leave to amend. *See* Opp'n at 24–25. It requests discovery in the hope of uncovering an ambiguity. *See id.* It does not explain its request for leave to amend. *See id.*

First, "[c]ontract law allows admission of extrinsic evidence 'to resolve an ambiguity,' even when the contract is an integrated agreement." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 963 (E.D. Cal. 2016) (quoting *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996)). "Extrinsic evidence may be offered both to explain an obviously ambiguous term and to reveal a latent ambiguity." *Id.* (citing *Pac. Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 37 (1968) and *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920 (2008)). But extrinsic evidence "may not flatly contradict the written contract or support an unreasonable interpretation of it." *Id.* at 967. VSP's proposed interpretation of "pollution conditions" is not reasonable, as explained above, so discovery is not warranted.

Finally, the court declines VSP's request for leave to amend. In the unusual circumstances of this case, in which the complaint's deficiencies are legal and plain, amendment would be an exercise in futility. *See, e.g.*, *Essentia Health*, 541 F. Supp. 3d at 953 (denying leave to amend because "the problem with [the] Complaint [was] a legal one, not a factual one"); *Winebarger v. Pa. Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 (C.D. Cal. 2019) (denying leave to amend contract claim based on legal shortcomings).

## IV. CONCLUSION

The request for leave to file a response (ECF No. 17) and the motion to dismiss (ECF No. 10) are **granted**.  The complaint is **dismissed without leave to amend**, and the case is **closed**.

IT IS SO ORDERED.

DATED: October 27, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE